CABAZON BAND OF MISSION INDIANS, a federally recognized Indian Tribe; Sycuan Band of Mission Indians, Plaintiffs–Appellants,

v.

Pete WILSON, Governor, et al., Defendant–Appellee.

No. 92–15751.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 5, 1993.

Decided May 9, 1994.

George Forman, Alexander & Karshmer, Berkeley, CA, and Glenn M. Feldman, O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, Phoenix, AZ, for plaintiffs-appellants.

Cathy Christian, Deputy Atty. Gen., Sacramento, CA, for defendant-appellee.

Before: BOOCHEVER, THOMPSON, and O'SCANNLAIN, Circuit Judges.

Opinion by Judge O'SCANNLAIN.

O'SCANNLAIN, Circuit Judge:

We consider the power of the State of California to tax offtrack betting activities on Indian reservations.

## I

Plaintiffs Cabazon Band of Mission Indians and Sycuan Band of Mission Indians ("the

Bands") conduct simulcast wagering (offtrack betting) on their reservations to raise tribal revenue. Such activities are regulated by the federal Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. §§ 2701–2721, which categorizes Indian gaming into three classes; simulcast wagering is Class III gaming. Under the IGRA, states and Indian tribes must negotiate compacts to regulate the terms under which Class III gaming may be conducted. Here, California and the Bands entered into compacts for the Bands to operate their simulcast wagering facilities.

Southern California Off Track Wagering, Inc. ("SCOTWINC") is a quasi-governmental organization of racing associations formed under California law. Cal.Bus. & Prof.Code § 19608.2. Both Bands entered written agreements with SCOTWINC and the racing associations which conduct the live horse races. SCOTWINC arranges for the racing associations' broadcast signals to be transmitted to the Bands' on-reservation simulcast wagering facilities. SCOTWINC also accepts the wagers and handles the cash at the Bands' facilities.

Under the terms of the compacts between California and the Bands, SCOTWINC distributes to the Bands 2.33% of the money wagered at their simulcast wagering facilities. Two percent is the typical commission offered by racing associations for operating a satellite wagering facility; the remaining 0.33% is paid to the Bands in their deemed "local government" capacity. The Bands contend that an additional amount should be distributed to them rather than remitted to the State of California measured by the proportion of license fees payable on wagers placed at their facilities.

SCOTWINC remits the license fee imposed under Cal.Bus. & Prof.Code §§ 19605.-71(a) and (b), 19606.5 and 19606.6 which is a percentage of all wagers placed. Different percentages are paid based on the location of the wager (ontrack or offtrack), the type of wager (conventional or exotic), and the type of race (breed of horse and distance). Part of this license fee is based on wagers placed at Indian wagering facilities. California concedes that the license fee is a tax. The Bands assert that part of the license fee based on wagers placed at Indian facilities is a tax on Indian activities, prohibited under the IGRA, and should be payable instead to the Bands.

Because the State of California and the Bands could not agree whether the State had the power to collect the license fee based on wagers at Indian facilities, the negotiated compacts specifically state that the Bands will sue the State for declaratory relief.[1] After the Bands brought suit, both sides moved for summary judgment which the district court granted for the State. *Cabazon Band of Mission Indians v. State of California,* 788 F.Supp. 1513 (E.D.Cal.1992). The Bands timely appealed.

## II

The Bands contend that the state's license fee is impermissible under the IGRA, section 2710(d)(4). We agree.

The IGRA expressly withholds from states the "authority to impose any tax, fee, charge, or other assessment upon an Indian tribe or upon any other person or entity authorized by an Indian tribe to engage in a class III activity." *Id.*

The license fee is indeed a "tax, fee, charge or other assessment," within the meaning of the IGRA as conceded by the State but it falls upon the racing associations.[2] The rac-

---

1. Specific consequences flow to the parties depending on the resolution of this appeal as detailed in paragraphs 19(B)(2) and 19(B)(3) of each compact.

2. The Bands do not pay any of their commission to the State, do not write a check to the State, and do not have any direct contact with the State with respect to the license fee. The Bands' argument that the tax is imposed directly on them because California law imposes different percentage license fees for wagers made at satellite

wagering facilities is not persuasive. *See* Cal. Bus. & Prof.Code §§ 19605.3, 19605.71, 19610 *et seq.* Simply because there are different tax rates depending on whether the wagers were placed at a satellite wagering facility or the originating track does not mean that the tax is imposed directly on the owners of the satellite wagering facility. The statutes the Bands cite also establish different tax rates for different breeds of horses and distances. Cal.Bus. & Prof.Code § 19605.71. This, of course, does not mean that the breed of horse pays a direct tax. Place of

ing associations conduct the horse races and collect the wagers. Afterwards, they pay a commission to the Bands and pay a license fee to the State based on the wagers placed both at the track and at all simulcast wagering facilities.

Nevertheless, such a tax is impermissible under the IGRA if the racing associations are entities that have been "authorized by an Indian tribe to engage in a class III activity." 25 U.S.C. § 2710(d)(4). They clearly are. The Bands have expressly authorized the racing associations to go onto tribal land and to conduct simulcast wagering.[3] Without this authorization by the Bands, the racing associations could not collect wagers at Indian facilities. Nothing more need be said. The license fee is a tax on an entity authorized by the Bands to engage in simulcast wagering, a class III activity. As such, it is prohibited by section 2710(d)(4).[4]

### III

Because of our disposition on the merits, we do not reach the question of whether state jurisdiction is preempted under general principles of federal Indian law. The district court's grant of summary judgment is reversed and remanded with instructions to enter summary judgment for the Bands.

REVERSED and REMANDED with instructions.

---

wager and breed of horse are simply variables in the tax formula.

3. Of course, not all of the racing associations' activities require authorization by the Bands. The racing associations exist independently of the Bands. The State can collect license fees based on all wagers not placed at Indian simulcast facilities without implicating the IGRA; this gaming does not require Band authorization and would occur whether or not the Bands conducted simulcast wagering.

4. The Bands contend that the licensing fees are an indirect tax on the Bands and are therefore prohibited under the IGRA. We need not address this issue here, because we decide this case on other grounds. Regardless of whether the fees have any indirect effect on the Bands, the State is not authorized under the IGRA to collect under these circumstances.